UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENDA PRICHARD,<br><br>          Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No. 1:25-cv-00471-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 17). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

Plaintiff presents the following issues:

1. The ALJ's RFC determination is not supported by substantial evidence because she failed in her duty to complete the record and obtain an opinion of Plaintiff's RFC from a medical professional.

2. The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer any reason for rejecting Plaintiff's subjective complaints.

1

1  (ECF No. 17, p. 3).

2  Having reviewed the record, administrative transcript, parties' briefs, and the applicable
3  law, the Court finds as follows.

**I.  ANALYSIS**

**A.  BACKGROUND**

Plaintiff filed an initial social security application in 2016, which resulted in an unfavorable decision in June 2019. (A.R. 22, 34). The RFC formulated at that time for Plaintiff was as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she can never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous environments. She is limited to remembering and carrying out simple routine tasks and making simple work-related decisions and cannot perform production pace tasks that require strict hourly goals. She can have frequent contact with supervisors and occasional contact with coworkers and the general public. She will be off-task 5 percent of the workday.

(A.R. 27).

Plaintiff filed a complaint for review in this District in Case No. 1:21-cv-103-SKO. Ultimately, the parties entered a stipulation for a voluntary remand pursuant to Sentence Four of 42 U.S.C. § 405(g), which stipulation was approved. (ECF No. 24 of Case No. 1:21-cv-103-SKO); (AR 1068-71).

After remand, the Appeals Council ordered the consolidation of the claims in the remanded case with the claims presented in Plaintiff's subsequent 2022 application. (A.R. 983 – "The Appeals Council noted that the claimant had filed a subsequent claim for Title XVI benefits on April 26, 2022. The Appeals Council asserted that given the remand, the subsequent claim was duplicative. The Appeals Council ordered the consolidation of the claims."). In the subsequent ALJ's decision in December 2023, the ALJ described the Appeals Council's direction on remand as follows:

> Give further consideration to the treating and nontreating source opinions pursuant to the provisions of 20 CFR 416.927, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating

and nontreating source provide additional evidence and/or further clarification of the opinion (20 CFR 416.920b).

Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96 - 8p). In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 416.927, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and nontreating source provide additional evidence and/or further clarification of the opinion (20 CFR 416.920b).

If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p). Ex. 14A.

(A.R. 982-93).

Following remand, the ALJ rendered another unfavorable decision on Plaintiff's claims in December 2023. (A.R. 997).

### B.      RFC and Failure to Develop the Record

Plaintiff challenges the following RFC formulated by the ALJ in the 2023 decision:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except for the following additional limitations: The claimant can never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous work environments. The claimant is limited to remembering and carrying out simple, routine tasks and making simple work-related decisions. She cannot perform production pace tasks that require strict hourly goals. She may have frequent contact with supervisors and occasional contact with coworkers and the general public. She should avoid tandem work with coworkers and large groups of people in the workplace, in other words, no more than 20 people in one room at one time. In addition, the claimant will be off task 5% of the workday.

(A.R. 988).

Plaintiff argues that:

3

> the record before the ALJ contained only opinions from a consultative examiner from 2017, the state agency consultants' determinations from 2016 and the 2021 determinations to accept the prior ALJ decision that has been overturned.[1] Ar. 113-15, 380, 1086-93. As such, the ALJ had a duty to develop the record and obtain an opinion from a medical professional.

(ECF No. 17, p. 17).

Defendant argues that:

> the record . . . contained five psychologists' medical source statements, three from 2017 and two from 2022, none of which indicated that Plaintiff was more limited mentally than as found in the RFC. AR 27, 97, 112, 384, 1084, 1111. Plaintiff has not shown that the record before the ALJ was too ambiguous or inadequate to allow for a proper evaluation of her claim.

(ECF No. 21, p. 10).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted).

Moreover, the Ninth Circuit has concluded that "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir 2022). However, the Ninth Circuit has also noted that an ALJ may not draw their own conclusions about certain medical evidence without the assistance of a medical opinion. *See Rondan v. Halter*, 8 Fed. App'x. 724, 725 (9th Cir. 2001) (unpublished) ("Instead of requesting a supplemental medical opinion that included consideration of the MRIs, the ALJ drew his own conclusions about the MRIs. The lack of a medical opinion that included consideration of the MRIs, and the fact that the RFC determination was made without consideration of Rondan's

---

[1] The state agency consultants' opinions are from 2017 and 2022, not 2016 and 2021 as Plaintiff states.

medical records, triggered the ALJ's duty to further develop the record."); *see also Shipp v. Colvin*, No. CV 13-9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) (noting that, because "the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record"); *Mack v. Saul*, No. 1:18-cv-01287-DAD-BAM, 2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020) ("[W]hile 'it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity,' it does not follow that the ALJ can substitute his own interpretations of medical records and data for medical opinions.") (citation omitted).

Plaintiff argues that the existence of new medical evidence in her case following the remand of her initial disability application "should have triggered the ALJ's duty to refer Plaintiff for a consultative examiner for evaluation of her impairments." (ECF No. 17, p. 18). However, the ALJ was not required to seek a new consultative examination solely because there was new medical evidence. *See Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (unpublished) ("ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination."); *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020) (unpublished) ("Finally, Owen argues that the ALJ erred in giving great weight to the non-examining state agency physicians' opinions, because the physicians did not review any evidence beyond July 2014. However, there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time. At the time they issued their opinions, the non-examining experts had considered all the evidence before them . . . .").

Although Plaintiff did not receive a new consultative examination after remand, her file was reviewed by two state agency psychological consultants in 2022. (A.R. 993). These opinions reviewed medical evidence, including records up to 2022 in reaching their decision. (*See* A.R. 1077-82; 1106-10). The ALJ relied primarily on these more recent opinions in rendering her decision, as explained in the ALJ's opinion as follows:

> State agency psychological consultants at the initial and reconsideration levels, with regard to the claimant's April 2022 application for title XVI benefits, adopted the residual functional capacity in the June 2019 decision. Exs. 12A/17-19; 15A/16-17. The undersigned gives the medical consultants' opinion significant weight. Although the consultants are non-treating and nonexamining sources, they reviewed the underlying record and were familiar with Social Security regulations and program standards. The consultants supported their determinations noting that the claimant had recent normal mental status exams and the record did not indicate a material change which would warrant a different residual functional capacity than asserted in June 2019 decision. Exs. 12A/19; 15A/18. The undersigned further finds that the consultants' determinations are generally consistent with the medical evidence of record. Nonetheless, the claimant's ongoing anxiety, depression schizoaffective disorder and post-traumatic stress disorder warrant additionally limiting the claimant to working with no more than 20 people in one room. The claimant's often unremarkable mental status exams and reported activities of daily living indicate that the claimant should be able to perform work activities within the residual functional capacity assessment. Exs. 5E; 6E; 7E; 9E; 38E; 39E; 40E; 1F; 2F; 3F; 3F/3, 8; 6F; 7F; 7F/3, 11; 8F/1-7; 11F; 11F/7; 13F/5-16, 24; 14F; 14F/1, 7, 14-18, 27-33, 47, 52, 66- 78, 82-94, 105, 118-122; 15F/9; 16F; 17F/1-32, 46, 99, 130-146, 162-163, 195; 19F; 19F/3, 8, 21; 20F; 22F/12-15, 43; 24F/6; 25F/4-5, 19; 26F/2-4; 28F/39; 29F/2, 9, 16, 19; 30F/7; Hearing Testimony.

(A.R. 993-94).

Plaintiff argues that the ALJ should have rejected these 2022 medical opinions because they "accept[ed] the prior ALJ decision that has been overturned." (ECF No. 17, p. 17). However, the remand stipulation and order did not require the ALJ to arrive at a different RFC upon remand. Instead, it directed the ALJ to more fully consider certain evidence and explain the weight given to such evidence. Specifically, it ordered the ALJ upon remand to consider:

> the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96 -8p). In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 416.927, and explain the weight given to such opinion evidence.

(A.R. 982). Plaintiff does not argue that the ALJ failed to abide by this remand order, or failed to consider the evidence of record, including treating and non-treating source opinions, and explain the weight given to such evidence.

Moreover, while similar, the RFC from the 2023 decision is not the same as the RFC from the 2019 decision.  (A.R. 994 – "The undersigned further finds that the consultants'

determinations are generally consistent with the medical evidence of record. Nonetheless, the claimant's ongoing anxiety, depression schizoaffective disorder and post-traumatic stress disorder warrant *additionally limiting the claimant to working with no more than 20 people in one room*.") (emphasis added).

Finally, Plaintiff fails to point to any evidence requiring an examination of Plaintiff, rather than a review by a consulting medical expert, especially given that Plaintiff's record included reports from other medical examinations. (A.R. 992 – "her outpatient exams reflected no more than moderate limitations."; A.R. 994 – "The consultants supported their determinations noting that the claimant had recent normal mental status exams and the record did not indicate a material change which would warrant a different residual functional capacity than asserted in June 2019 decision.").

Accordingly, the Court does not find error in the ALJ failing to order an additional medical examination.

### C. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to reject her subjective complaints. (ECF No. 17, p. 19). Defendant argues that the ALJ's reasoning was sufficient to discount Plaintiff's subjective complaints. (ECF No. 21, p. 3).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the

ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

As to Plaintiff's subjective complaints, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected cause the alleged symptoms." (A.R. 989). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ summarized Plaintiff's medical treatment and Plaintiff's subjective complaints, and explained why Plaintiff's examination supported no more than moderate limitations, stating:

> In terms of the claimant's mental impairments, mental status examinations indicate no more than moderate limitations. She had depression, anxiety, fair to good grooming and hygiene, intermittent to good eye contact, impaired to intact insight and judgment, moderately impaired to adequate fund of knowledge, impaired to good impulse control, reports of auditory and visual hallucinations, and abnormal (paranoid, delusional, suspicious, phobic, and/or magical) to normal thought content. She had one episode of tearfulness and superficial lacerations on the left arm, as well as occasional findings of euphoria, withdrawal, tremors or arm bouncing, rapid speech, limited rapport, frustration, poor self-esteem, impaired attention and concentration, fair memory, and reports of self-harming or passive/active suicidal thoughts. At the same time, she typically appeared alert, awake, calm, pleasant, attentive, and oriented and did not appear to be responding to internal stimuli. She further exhibited a neat appearance, good engagement, coherent communication, a cooperative demeanor, unremarkable behavior, otherwise normal speech, intact motor activity, otherwise intact concentration, normal abstraction, normal thought process without flight of ideas or racing thoughts, intact comprehension, otherwise normal memory, estimated low-normal to above-average intelligence, otherwise no tremors, reduced hallucinations and paranoia with treatment, otherwise no suicidal ideation, and no homicidal ideation. Exs. 1F; 3F; 6F; 7F; 8F; 11F; 13F; 14F; 15F/9; 16F; 17F/1-32, 46, 99, 134-146, 162, 195; 19F; 20F; 22F/43; 25F/5; 26F/3; 30F/7.

1  (A.R. 990-91).

2  The ALJ concluded that, "[i]n terms of the medical evidence, the record supports some
3  limitations, but not enough to support a finding of disability." (ECF No. 989). The ALJ's reliance
4  on the medical evidence as one reason to discount Plaintiff's subjective symptom testimony was
5  proper. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain
6  testimony cannot be rejected on the sole ground that it is not fully corroborated by objective
7  medical evidence, the medical evidence is still a relevant factor in determining the severity of the
8  claimant's pain and its disabling effects.").

9  Moreover, the ALJ properly relied on evidence inconsistent with disability to discount
10  Plaintiff's subjective complaints.

> As for her description of her symptoms, the claimant's statements regarding their intensity and frequency were not entirely consistent with the record as a whole. She testified to command hallucinations three times a week, but previously denied this consistently. Exs. 3F/8; 13F/5-14; 14F/14-18, 30, 66-78, 105. The claimant reported crying spells 2-3 times a week did not correspond with only one clinical observation of tearfulness. Ex. 17F/144. With self-harming, she previously reported in March 2015 that she had not engaged in cutting behaviors in several years. Ex. 13F/8. She later reported in July 2017 that she had not cut in several months. Ex. 14F/7. The claimant had superficial forearm cuts during her 2018 hospitalization. Ex. 19F/21. In June 2022, the claimant reported cutting but had barely visible cuts on her left lower arm. Ex. 23F/11. A psychiatrist's observation that she "appears to be catastrophizing" with an "incongruent" affect suggested her symptoms were possibly not as severe as reported. Exs. 1F; 13F/14-16, 24; 14F/94; 17F/130-146; 19F.

(A.R. 992); *see Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Lastly, the ALJ properly relied on Plaintiff's ability to engage in certain daily activities that were not consistent with Plaintiff's testimony regarding her limitations:

> The claimant's activities of daily living further support a finding that she is not disabled. Despite her conditions, she could do personal care, clean, do laundry, make simple meals daily, help care for her dog, color and play games occasionally, talk to family on Facebook, go online, take public transportation when needed, pay bills, shop for groceries twice a month, drive when needed, paint, listen to music, watch TV, walk up to several times a day for exercise, follow instructions okay, go out alone, finish tasks, and get along with others. Exs. 5E; 6E; 7E; 9E; 8F; 14F/47, 121-122; 16F; Hearing Record. Though the claimant previously claimed she could

> not do chores, cook, run errands, or shop, this was inconsistent with her other statements. Ex. 8F. The record indicated problems performing her past jobs as a truck driver, cashier, and telecommunications worker, but the weight of the evidence of record shows she is able to perform less demanding work as described below. Ex. 12E; Hearing Testimony.

(A.R. 992); *see Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by statute* ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Thus, the Court finds that the ALJ provided legally sufficient reasons to reject Plaintiff's subjective complaints.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated: **December 1, 2025**      /s/ Erica P. Grosjean
                                  UNITED STATES MAGISTRATE JUDGE